UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 24-23719-CIV-MARTINEZ

WALESWKA PEREZ *et al.*,

    Plaintiffs,

v.

NICOLAS MADURO MOROS *et al.*,

    Defendants.

_____/

**ORDER GRANTING DEFAULT JUDGMENT**

    This matter comes before the Court on Plaintiffs' Motion for Default Judgment ("Motion"), (ECF No. 48), filed against Nicholas Maduro Moros ("Maduro"), Vladimir Padrino Lopez ("Padrino Lopez"), Maikel Moreno Perez ("Moreno"), Nestor Reverol Torres ("Torres"), Manuel Ricardo Cristopher Figuera ("Figuera"), Cartel de los Soles ("COS"), and Fuerzas Armadas Revolucionairias de Colombia ("FARC") (collectively referred to herein as "Defendants"). The Court has reviewed the Motion, the supporting exhibits, (ECF No. 49), the pleadings, the applicable law, the record, and is otherwise fully advised. Based thereon, the Motion is **GRANTED**.

    **I.**    **PROCEDURAL HISTORY**

    On September 27, 2024, Waleswka Perez ("Perez"), Luis Lugo Calderon ("Calderon"), Luis de la Sotta Quiroga ("Quiroga"), and Eduardo Figueroa Marchena ("Marchena") (collectively referred to herein as "Plaintiffs") initiated this action. (*See* ECF No. 1). Proposed summonses were filed and issued on October 2, 2024. (*See* ECF Nos. 3–14). On October 22, 2024, the Court granted Plaintiffs' motions to have representatives of COS and FARC served via the U.S. Marshal's Service ("USMS"). (ECF Nos. 25–26). On December 6, 2024, the Court also granted Plaintiffs' request to serve Maduro, Padrino Lopez,

Moreno, and Torres by alternative means, including by e-mail, text message, and direct message through verified social media accounts. (ECF No. 29).

USMS served FARC on December 19, 2024. (*See* ECF No. 31). Figuera was served at his home on January 11, 2025. (ECF No. 37). USMS served COS on January 16, 2025. (ECF No. 38). Finally, Maduro, Padrino Lopez, Moreno, and Torres were served via the approved alternative means on January 29, 2025. (ECF No. 39).

To date, none of the Defendants have appeared or filed a responsive pleading. On March 3, 2025, Plaintiffs filed their Motion for Clerk's Default. (*See* ECF Nos. 40–41). The Clerk entered default that same day. (ECF No. 43). Also on that day, the Court entered an Order giving Defendants until March 17, 2025 to appear. (ECF No. 44). Again, no response came from any of the Defendants.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55 outlines two steps to obtain default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, as shown by affidavit, "the clerk must enter the party's default." *See* Fed. R. Civ. P. 55(a). This procedural step was completed on March 3, 2025. (ECF No. 43). Second, the Court must determine whether it is appropriate to enter default judgment. Fed. R. Civ. P. 55(b)(2).

By its default, a defendant "admits the plaintiff's well-pleaded allegations of fact." *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1106 (11th Cir. 2015) (internal citation and quotation omitted). When the facts admitted via default are sufficient to establish liability, a court is left only to ascertain the appropriate amount of damages before entering final judgment. *See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004). To make a determination regarding damages, a court must find that "the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Adolph Coors Co. v. Movement*

*Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (internal citation and quotation omitted). Federal Rule of Civil Procedure 55(b)(2) does not mandate holding an evidentiary hearing so long as "all essential evidence is already of record." *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015).

### III. ANALYSIS

The Court finds that the record before it is sufficient as to both liability and damages, and therefore no evidentiary hearing is necessary.[1]

#### A. The Court Has Subject-Matter Jurisdiction Over This Action.

Plaintiffs assert two distinct causes of action raising federal question jurisdiction. *See* 28 U.S.C. § 1331. Count I, which is brought against the five individual defendants, is filed pursuant to the Torture Victim Protection Act of 1991 ("TVPA"), a federal law passed for the express purpose of providing access to justice for victims of torture. (*See* ECF No. 1 at 34–37). Count II is brought under the Alien Tort Statute ("ATS"), a long-standing basis for obtaining federal jurisdiction against foreign defendants. (*See id.* at 37–38). The Court finds that Defendants' collective actions resulting in the detention, torture, and death alleged in Plaintiffs' Complaint and described in detail through affidavits, touched and concerned the United States with sufficient force to support the exercise of the Court's jurisdiction as to Count II. *See Doe v. Drummond Co.*, 782 F.3d 576, 593 (11th Cir. 2015).

Count IV asserts state law claims derived from Venezuelan domestic law. (*See* ECF No. 1 at 41–42). Those legal claims arise from the same case and controversy as the federal claims brought in Counts I and II. Therefore, this Court has supplemental jurisdiction over the Venezuelan law claims alleged in Count IV. *See* 28 U.S.C. § 1367(a).

---

[1] In their Motion, Plaintiffs did not advance a theory of recovery under Count III, the RICO claim. Because the Court finds in Plaintiffs' favor on the Motion, the claims brought pursuant to Count III are moot and will be dismissed. Therefore, the Court will analyze only those claims raised under Count I, Count II, and Count IV.

## B. The Court Has Personal Jurisdiction Over Defendants.

One individual defendant, Figuera, was properly served pursuant to Rule 4(e)(2)(B) at his home residence and domicile located inside the Southern District of Florida. (*See* ECF No. 37). Therefore, this Court has personal jurisdiction over Figuera. The remainder of Defendants were served outside the State of Florida.

Exercising "personal jurisdiction over a nonresident defendant" requires the plaintiff to allege "sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). To do so, "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Mazer*, 556 F.3d at 1274.

The Court finds that the Florida long-arm statute is satisfied because Defendants each participated in a conspiracy to conduct "substantial and not isolated activity" within the State of Florida. *See* Fla. Stat. § 48.193(2). That substantial activity was the illegal narcotics trade outlined in great detail throughout Plaintiffs' Complaint, (*see, e.g.*, ECF No. 1 ¶¶ 29–34), and further evidenced by the numerous indictments issued out of this District that are cited by the Complaint, (*id.* ¶¶ 27–28, 62). Moreover, the Court need not rely solely on the substantial nature of these forum-directed activities because the specific claims raised in this case arose from and relate to conduct directed at and into the State of Florida. *See* Fla. Stat. § 48.193(1)(a)(2). Defendants' narcotics trafficking was essential to keeping the Maduro regime in power in Venezuela, thereby facilitating the detention and torture of those perceived to threaten those efforts. (*See, e.g.*, ECF No. 1 ¶¶ 59–61, 173). To the extent that any individual defendant did not personally commit forum-directed tortious acts, the acts of co-conspirators are also sufficient to satisfy long-arm jurisdiction. *See Mazer*, 556 F.3d at 1281–82 (allegations "can support personal jurisdiction over any

4

alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy").

The Due Process Clause requires "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotation marks removed). The Eleventh Circuit has a three-part test, which asks whether the connections to the forum state "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1276 (11th Cir. 2022) (citing *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357 (11th Cir. 2013)).

For the first part, as discussed above, Plaintiffs' claims are directly related to Defendants' longstanding narcoterrorism conspiracy. Members of that conspiracy have been indicted in the State of Florida for overt acts in furtherance of the conspiracy. (ECF No. 1 ¶¶ 27–28). The success of the narcoterrorism conspiracy, and the laundering of funds through Florida, was essential to the continued viability of the Maduro regime in Venezuela. (*Id.* ¶¶ 57–61).

Addressing the second part, Plaintiffs' Complaint details how each of the Defendants purposefully availed themselves of conducting substantial activities within the State of Florida in a way that was "not random, isolated, or fortuitous." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1230 (11th Cir. 2023) (cleaned up). Members and leaders of COS and FARC were repeatedly indicted for their extensive narcoterrorism and money laundering activities in this forum. (*See, e.g.*, ECF No. 1 at ¶¶ 28, 39–40). Maduro, Padrino Lopez, Moreno, and Torres each personally directed the conspiracy, aimed it squarely

5

at the United States, passing large quantities of drugs and money through the State of Florida. (*See e.g.*, *id.* at ¶¶ 41–44).

Therefore, for part three, it is entirely reasonable that Defendants would expect they may be haled into Court within this District. This same conspiracy has already resulted in numerous criminal indictments within this jurisdiction. (*Id.* at ¶ 28). Moreover, Defendants have been the subject of civil litigation in this District arising out of the same activities. *See Osio v. Maduro*, Case No. 1:21-cv-20706; *Marron v. Maduro*, Case No. 1:21-cv-23190. Despite knowledge of these ongoing civil and criminal consequences, Defendants' actions directed towards and within the State of Florida have continued unabated.

Based on the foregoing, this Court has personal jurisdiction over Defendants.

### C. The Admitted Allegations of Plaintiffs' Complaint Prove Defendants' Liability as to Counts I, II, and IV.

Plaintiffs have advanced three theories of liability in their Motion. First, torture and extrajudicial killing under the TVPA; second, violations of the law of nations through the ATS; and third, arbitrary detention, torture, and wrongful death pursuant to Venezuelan law.

#### 1. The individual defendants are liable under the TVPA.

Plaintiffs have brought TVPA claims against Maduro, Padrino Lopez, Moreno, Torres, and Figuera. (ECF No. 1 at ¶¶ 133–52). The TVPA "creates an express cause of action for victims of torture and extrajudicial killing in violation of international law." *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 256 (2018). Based on its specific terms, "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation—(1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or (2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative." TVPA § 2(a); *see also Baloco ex rel. Tapia v.*

*Drummond Co.*, 640 F.3d 1338, 1346 (11th Cir. 2011) (confirming that a "plaintiff who satisfies these elements possesses a cause of action under the TVPA").

Plaintiffs have sufficiently alleged that the victims in this case were tortured as the term is defined by the TVPA. *See* TVPA § 3(b); *see also* ECF No. 1 at ¶¶ 93–132. Each of those acts of torture were committed while the victim was in Venezuelan state custody, under "color of law." *See Baloco*, 640 F.3d at 1346. To hold the individual defendants liable in this case, Plaintiffs assert a conspiracy to violate the TVPA.

To prove conspiracy in the TVPA context, Plaintiffs must establish "that (1) two or more persons agreed to commit a wrongful act, (2) [Defendant(s)] joined the conspiracy knowing of at least one of the goals of the conspiracy and intending to help accomplish it, and (3) one or more of the violations was committed by someone who was a member of the conspiracy and acted in furtherance of the conspiracy." *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1159 (11th Cir. 2005) (citing *Halberstam v. Welch*, 705 F.2d 472, 481, 487 (D.C. Cir. 1983)). The admitted allegations of the Complaint establish that Maduro, Padrino Lopez, Moreno, Torres, and Figuera conspired to identify perceived opponents to their regime, utilize the arms of state power to detain them, and either ordered or enabled their extensive torture with the express purpose of instilling fear in the hearts of those who might stand up to them. (*See, e.g.*, ECF No. 1 at ¶¶ 43, 49, 74, 77, 82, 86–87).

Therefore, the Court finds Maduro, Padrino Lopez, Moreno, Torres, and Figuera liable to Plaintiffs under Count I.

2. *Defendants violated the law of nations and are liable under the ATS.*

In Count II, Plaintiffs asserted ATS claims against all Defendants for violations of the law of nations via conspiracy to commit acts of torture, as well as cruel, inhuman, and degrading treatment. (*Id.* at ¶¶ 153–62). For such claims to succeed, "a plaintiff must (1) be an alien, (2) suing for a tort,

(3) committed in violation of the law of nations." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011). The first two elements are met from the face of the Complaint. (*See* ECF No. 1 at ¶¶ 35–38).

Although the definition of torture, which is an act that violates the law of nations, is slightly different under the ATS than it is for TVPA claims, Plaintiffs' allegations have no greater difficulty in passing that hurdle than they did under the TVPA. Arevalo endured a broken nasal septum, multiple fractures, and burns. (*Id.* at ¶ 99). Calderon was denied food and beaten to the point of serious injuries to his sternum, knees, and one of his testicles. (*Id.* at ¶¶ 105–06). Quiroga was denied access to the bathroom, beaten with sticks, and suffocated with a plastic bag filled with tear gas. (*Id.* at ¶ 118). Marchena was deprived of food and light, subjected to beatings and asphyxiated. (*Id.* at ¶¶ 129–30). Plaintiffs provided many additional details of their mistreatment in their affidavits, but the Court need look no further than the Complaint for the purposes of liability. *See Lary*, 780 F.3d at 1106.

Because the same theories of secondary liability discussed above are applicable to Plaintiffs' ATS claim, *see Cabello*, 402 F.3d at 1158 (ATS and TVPA both include "direct and indirect theories of liability"), this Court finds the Defendants liable to Plaintiffs under Count II.

### 3. Defendants are liable to Plaintiffs under Venezuelan law.

Finally, in Count IV, Plaintiffs have alleged claims for arbitrary detention, torture, and the wrongful death of Arevalo under Venezuelan domestic law. To establish the theories of recovery available in Venezuela, Plaintiffs offered the affidavit of a Venezuelan attorney and professor of law. The Court qualifies that individual as an expert in Venezuelan law for the purposes of the instant Motion and accepts the expert's affidavit as a part of the record.

Article 23 of the Constitution of the Bolivarian Republic of Venezuela requires that all international treaties and conventions regarding human rights are to be incorporated within Venezuelan law, superior to any other conflicting laws. *See, e.g.*, Venezuela (Bolivarian Republic of) 1999 (rev. 2009),

8

*available at* https://www.constituteproject.org/constitution/Venezuela_2009 (for English translation); *see also* Gaceta Oficial No. 5908, 15 de febrero de 2009, *available at* https://www.asambleanacional.gob.ve/leyes/sancionadas/constitucion-de-la-republica-bolivariana-de-venezuela-enmienda-no-1-de-fecha-15022009-publicada-en-la-gono-5908-de-fecha-19022009 (for original). Accordingly, Venezuela has adopted several international conventions into law, prohibiting the acts of arbitrary detention, torture, and extrajudicial killing under color of law, most recently in 2013 with the passage of the Special Law to Prevent and Punish Torture and Other Cruel, Inhuman, or Degrading Treatment. (Mot. Exhibit 1 at ¶¶ 9–10).

Under the constitution and laws of Venezuela, a violation of these provisions could result in civil liability to the victim of these acts. (*Id.* at ¶ 12). This culpability and liability would apply equally to government officials, whether under orders of a superior or as the ones giving the orders, as well as those who served as the instigator, accomplice, or concealer of these acts. (*Id.* at ¶ 13).

Therefore, based on the same admitted allegations of systemic torture discussed above, this Court finds Defendants liable to Plaintiffs under Count IV.

### D. The Complete Record Sufficiently Establishes Plaintiffs' Rights to Appropriate Awards of Compensatory and Punitive Damages.

After making a finding in Plaintiffs' favor as to liability, the Court must still evaluate and examine the claims for damages, which "may be awarded only if the record adequately reflects the basis for award." *Adolph Coors Co.*, 777 F.2d at 1544. In doing so, this Court has carefully reviewed both the admitted allegations of the Complaint, (ECF No. 1), and Plaintiffs' recently filed affidavits, (ECF No. 49).

*1. The Court awards compensatory damages to Plaintiffs consistent with recent precedent of this District and the severity of their injuries.*

The Court looks to six factors for determining an appropriate award for compensatory damages for torture: "1. Brutality of the act; 2. Egregiousness of defendant's conduct; 3. Unavailability of criminal

9

remedy; 4. International condemnation of act; 5. Deterrence of others from committing similar acts; and 6. Provision of redress to plaintiff, country and world." *Licea v. Curacao Drydock Co.*, 584 F. Supp. 2d 1355, 1364 (S.D. Fla. 2008) (citing *Doe v. Saravia*, 348 F. Supp. 2d 1112, 1158 (E.D. Cal. 2004)). Within that framework, the Court should also consider "the damage awards given in cases concerning [similar] abuses." *Id.*

Here, the Court has two recent cases from this District with strikingly similar factual allegations through which to compare the current matter. *See Marron v. Maduro Moros*, Case No. 1:21-cv-23190, ECF No. 44 (S.D. Fla. Jan. 23, 2023); *Alban Osio v. Maduro Moros*, SDFL Case No. 1:21-cv-20706, ECF No. 56 (S.D. Fla. Sep. 5, 2022) (R&R adopted without change). Reviewing those recent claims, and carefully evaluating the damages evidence provided by Plaintiffs, the Court finds no reason to depart from the reasoning and damages framework laid out in *Marron* and *Alban Osio*.

Therefore, the Court will award the surviving victim Plaintiffs $18,164 per day in captivity, plus an additional lump sum of $10,000,000 for "pain and suffering heightened by torture." *See Marron*, ECF No. 44 at 9–10 (citing *Miller v. Cartel*, Case No. 1:20-cv-00132, 2022 WL 2286952, at *35 (D.N.D. June 24, 2022)). For the estate Plaintiff, the Court will award $25,000,000 for the loss of the surviving spouse, $20,000,000 for each child, and an additional $7,000,000 for the pain and suffering of the deceased resulting from torture. *See Alban Osio*, ECF No. 56 at 23–25.

> 2. *The Court awards punitive damages against Defendants in recognition of their widespread and systemic violations of international norms and human dignity.*

Punitive damages awards in the context of torture claims "must reflect the egregiousness of the defendant's conduct, the central role he played in the abuses, and the international condemnation with which these abuses are viewed." *Paul v. Avril*, 901 F. Supp. 330, 335–36 (S.D. Fla. 1994) (citing *Filartiga v. Pena-Irala*, 577 F. Supp. 860, 866 (E.D.N.Y. 1984)). At the same time, the Court may also look to "the

rationale applied in similar cases" as an appropriate method for grounding its subsequent award. *Licea*, 584 F. Supp. 2d at 1366.

Based on the severity of Defendants' conduct reflected in the record and the high level of international condemnation for these acts, the Court finds that a substantial punitive damages award is appropriate. Comparing this case to recent cases from this District, as well as other cases involving acts of torture and terrorism, the Court will award punitive damages equal to three times the compensatory damages awarded to Plaintiffs. *See Marron*, ECF No. 44 at 11; *see also Flanagan v. Islamic Republic of Iran*, 87 F. Supp. 3d 93, 119–26 (D.D.C. 2015).

### IV.  CONCLUSION

For the reasons explained above, the Court hereby **ENTERS** default judgment against Defendants, jointly and severally, as to Counts I, II, and IV, awarding Plaintiffs damages in the following amounts:

| Plaintiff | Compensatory Damages | Punitive Damages | Total Damages |
|---|---|---|---|
| Waleswka Perez, in her capacity as personal representative of the Estate of Rafael Acosta Arevalo | $72,000,000 | $216,000,000 | $288,000,000 |
| Luis De La Sotta Quiroga | $45,601,440 | $136,804,320 | $182,405,760 |
| Luis Lugo Calderon | $48,398,696 | $145,196,088 | $193,594,784 |
| Eduardo Figueroa Marchena | $35,338,780 | $106,016,340 | $141,355,120 |

DONE AND ORDERED in Chambers in Miami, Florida on this 28 day of March 2025.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All counsel of record