**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

**WALESWKA PEREZ** *et al.*,

    **Plaintiffs/Judgment Creditors,**

**v.**

**MANUEL CRISTOPHER FIGUERA** *et al.*,

    **Defendants/Judgment Debtors, and**

**BARBARA MIRTHALA BRAVO REINEFELD,**

**JORGELIECER PINTO BRAVO,**

**ALEX NAIN SAAB MORAN,**

**and**

**CILIA ADELA FLORES DE MADURO,**

    **Impleaded Third-Party Defendants.**

Case No. 1:24-cv-23719 (JEM)

JURY TRIAL DEMANDED

### THIRD-PARTY COMPLAINT

COME NOW, Plaintiffs and Judgment Creditors Waleswka Perez, in her capacity as personal representative for the Estate of Rafael Acosta Arevalo, Luis Lugo Calderon, Luis de la Sotta Quiroga, and Eduardo Figueroa Marchena (collectively "Creditors"), through counsel, and file this Supplemental Complaint in Proceedings Supplementary against Defendant/Judgment Debtors Nicolas Maduro Moros, Vladimir Padrino Lopez, Maikel Moreno Perez, Nestor Reverol Torres, Manuel Ricardo Cristopher Figuera, Fuerzas Armadas Revolucionarias De Colombia, and Cartel de Los Soles (collectively, "Defendants" or "Judgment Debtors"), and the Impleaded Defendants Barbara Mirthala Bravo Reinefeld, Jorgeleicer Pinto Bravo, Alex Nain Saab Moran,

and Cilia Adela Flores de Maduro (collectively "Impleaded Defendants") and, in support thereof allege as follows:

## I.  NATURE OF THE SUPPLEMENTAL COMPLAINT

1. Creditors are far from ordinary judgment creditors. They seek to enforce a judgment of this Court awarding over $800 million in damages for the horrific detention, torture, and cruel, inhuman, and degrading treatment, leading in one case to death, suffered while unlawfully detained by members of the Maduro-led narcoterrorism enterprise known as Cartel de Los Soles ("COS").

2. Judgment debtor Manuel Christopher Figuera (hereinafter "Figuera"), now a resident of the State of Florida, was former head of two units which played a critical role in the widespread and systematic torture of countless Venezuelan citizens, including the four victims represented here.

3. Figuera has neither denied his leadership role in these units nor the occurrence of the widespread torture upon which the Creditor's judgment is based. Indeed, he has publicly stated that he "share[s] responsibility for Maduro's stay in power, like any official who's been part of this criminal enterprise. But if someone has evidence against me, I have no fear to face justice."[1] He has also said to "the people who were victims of the abuse of torture in Venezuela, I want to ask forgiveness because I was co-responsible for the permanence of power in the misgovernment of Nicolas Maduro."[2]

4. Despite his open acknowledgment of his role in the horrors suffered by Creditors and his carefully cultivated persona as a reformed and contrite defector, Figuera failed to appear

---

[1] *See* Jose Enrique Arrioja & Ethan Bronner, Top Defector Tells of Spying, Stealing and Mutiny in Venezuela, BLOOMBERG (July 29, 2019), *available at:* https://www.bloomberg.com/news/articles/2019-07-29/top-defector-tells-of-spying-stealing-and-mutiny-in-venezuela.

[2] *See* Nick Schifrin, Former Maduro Intelligence Chief on Why Guaidó's Revolt Failed, PBS NewsHour (July 23, 2019), *available at:* https://www.pbs.org/newshour/show/former-maduro-intelligence-chief-on-why-guaidos-revolt-failed; *see also:* Cristopher Figuera to NTN24: Maduro uses government agencies as centers for extortion and kidnapping *available at:* https://www.youtube.com/watch?v=iG_eSNZbUtE.

in this case and has knowingly taken extensive efforts to fraudulently transfer all funds and assets under his custody and control out of reach of potential judgment creditors, including by transferring assets to impleaded defendants Barbara Mirthala Bravo Reinefeld ("Reinefeld") and Jorgeleicer Pinto Bravo ("Pinto Bravo").

5.       Impleaded defendant Alex Nain Saab Moran (hereinafter "Saab") is an agent, frontman, and confidant of judgment debtor, Nicolas Maduro.[3] Saab has long played a vital role in establishing and maintaining the illicit financial networks that facilitate Maduro's unlawful activities and, upon information and belief, Maduro entrusted him with Maduro's personal wealth.

6.       According to the U.S. Treasury, since at least 2019, Saab has cooperated with the illegitimate Maduro regime and its nationalized oil company, PDVSA, to evade U.S. sanctions. In one instance, Saab conducted an "oil-for-food" program through which Saab brokered a $300 million resale, representing over 40% of PDVSA's oil exports, for food stuffs in an amount which was never actually delivered.[4]

7.       In addition, the COS narco-terrorism enterprise has concentrated an obscene amount of illicit wealth in the hands of several of the judgment debtors in the underlying action, especially Nicolas Maduro, and his wife, impleaded defendant Cilia Adela Flores de Maduro (hereinafter "Flores"). Upon information and belief, Flores also holds funds on behalf of Maduro.

8.       Through these proceedings supplementary, the judgment Creditors implead several additional defendants from the COS orbit who, upon information and belief, are presently holding assets, including real and personal property, hard and virtual currency, and other tangible and

---

[3] *See* Alex Saab by Insight Crime "Venezuela / Venezuelan Personalities / Alex Saab" updated 28 Oct. 2025 *available at:* https://insightcrime.org/venezuela-organized-crime-news/alex-saab-2/.

[4] *See* U.S. Treasury Press Release, "Treasury Targets Sanctions Evasion Network Supporting Corrupt Venezuelan Actors" (June 18, 2018) *available at:* https://home.treasury.gov/news/press-releases/sm1038).

intangible things of value, on behalf of COS, Maduro, and/or Figuera, which should be executed upon to satisfy their judgment as permitted by United States and Florida law.

## II.        PARTIES, JURISDICTION, AND VENUE

9.        On March 28, 2025, this Court entered an Order Granting Default Judgment in favor of Creditors and against Defendants/Judgment Debtors, awarding damages of $805,355,664 (hereinafter the "Judgment"), as well as post judgment interest, which continues to accrue. The judgment remains valid, final, and wholly unsatisfied:

        a.        Waleswka Perez: $288,000,000;

        b.        Luis De La Sotta Quiroga: $182,000,000;

        c.        Luis Lugo Calderon: $193,000,000;

        d.        Eduardo Figueroa Marchena: $141,000,000.

10.        This Supplemental Complaint is filed in proceedings supplementary pursuant to Fed. R. Civ. P. 69(a), Fla. Stat. § 56.29, and Chapter 726, Florida Statutes, to recover fraudulent transfers of the Judgment Debtors' property and to subject the same to execution for satisfaction of the Judgment.

11.        This Court has ancillary jurisdiction to enforce its Judgment, including to void fraudulent transfers and to order disgorgement of fraudulently transferred assets. *See National Maritime Services, Inc. v. Straub*, 776 F.3d 783, 787 (11th Cir. 2015) (stating that federal courts have ancillary jurisdiction over a broad range of proceedings supplementary against third parties "to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances") (quoting *Peacock v. Thomas*, 516 U.S. 349, 354 (1996)).

4

12. Because Impleaded Defendants are citizens of a different state than Creditors, and the amount in controversy exceeds $75,000, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332.

13. Venue is proper in this District because the underlying Judgment was rendered here, the proceedings supplementary must be entertained in the court that rendered the Judgment, and the property and transfers at issue have a substantial nexus to this District and to the State of Florida.

14. Defendant/Judgment Debtor Figuera is a natural person, who resides in Florida and, upon information and belief, at relevant times listed 1111 NW 40th Ter, Lauderhill, Florida 33313 (the "Property") as his address on a Florida-issued driver's license.

15. Defendant/Judgment Debtor Maduro is a natural person, who is presently incarcerated in New York.

16. Impleaded Defendant Reinefeld is a natural person, who resides in Florida and, upon information and belief, at relevant times listed the Property as her address on a Florida-issued driver's license. Upon information and belief, Reinfeld is Figuera's ostensibly estranged ex-wife, as of 2024, but she continues to receive substantial financial deposits from Figuera.

17. Impleaded Defendant Pinto Bravo is a natural person, who is the record owner of the Property, and has been since on or about August 24, 2020. *See* Broward County Official Records—Warranty Deed dated on or about August 24, 2020, recorded in O.R. Book/Page and Broward County Property Appraiser records for 1111 NW 40th Ter, Lauderhill, FL 33313. Upon information and belief, Pinto Bravo is Reinfeld's adult son and Figuera's stepson, who shared a residence with Figuera for several years.

18.     Personal jurisdiction exists for Reinefeld and Pinto Bravo because each of them is domiciled in Florida and the Property is located in Florida.

19.     Impleaded Defendant Saab is a resident of Venezuela and a trusted, long-time financier and frontman of Maduro and the COS. In 2019, the United States designated Alex Saab and indicted him in the United States District Court for the Southern District of Florida for conspiracy to commit money laundering in connection with a scheme involving $350 million in wire transfers.[5] Saab has long been entrusted with Maduro's personal finances. His importance to Defendants/Judgment Debtors COS and Maduro became self-evident following Maduro's zealous and ultimately successful efforts to negotiate Saab's release from U.S. custody following his extradition.[6]

20.     Impleaded Defendant Flores, until her recent arrest, was the *de facto* First Lady of Venezuela after marrying Defendant/Judgment Debtor Maduro and has been involved in both Venezuelan politics and drug trafficking for decades. She is presently incarcerated in New York. In or around 2007, Flores accepted hundreds of thousands of dollars in bribes to broker a meeting between a large-scale drug trafficker and Defendant/Judgment Debtor Nestor Reverol Torres, who later paid Flores to ensure safe passage for several aircraft flights transporting cocaine.[7] One instance which illustrates the sheer vastness of wealth controlled by COS, Maduro, and Flores over the years was a recorded conversation with a DEA source during which Flores' accomplices indicated they were seeking to raise $20 million in drug proceeds to support her National Assembly campaign.[8]

---

[5] *See* U.S. Dep't of the Treasury, *Treasury Disrupts Corruption Network Stealing from Venezuela's Food Distribution Program, CLAP* (July 25, 2019), *available at:* https://home.treasury.gov/news/press-releases/sm741.
[6] *See* Rachel Pannett, *Venezuela Suspends Talks with Opposition After Maduro Ally Extradited to the United States*, Wash. Post (Oct. 17, 2021), *available at:* https://www.washingtonpost.com/world/2021/10/17/venezuela-saab-extradition-citgoopposition-talks/.
[7] *See United States v. Maduro Moros et al.*, Case No. 1:11-cr-00205-AKH, Indictment, Doc. 260p. 11, para. b.
[8] *Id.* at p. 16, para. K.

21.     Personal jurisdiction exists for Saab and Flores because they, directly or through agents, participated in or benefitted from transfers of property that targeted the State of Florida as a primary market/corridor for narcotics proceeds and laundering and used Florida-based financial channels and custodians to manage the flow of their ill-gotten gains, including funds transferred on behalf of or for the benefit for Defendants/Judgment Debtors COS and Maduro.

22.     The Judgment in this action includes detailed findings that the Judgment Debtors led and operated a narco-terrorist enterprise, by and through COS, in concert with elements of FARC, to traffic cocaine into the United States—with Florida as a primary target market and corridor—and that COS/FARC narcotics, corruption, and laundering revenue streams financed the systematic torture and disappearances of individuals, including Creditors.

23.     The Department of Justice has publicly stated that COS actors, including Maduro and Flores, intended to flood the United States with cocaine and has reported seizures of approximately $450 million in Florida-based assets connected to the scheme. COS has recently been designated as a Foreign Terrorist Organization based on those same types of activities directed towards the United States.[9]

23.     Defendants/Judgment Debtors and their co-conspirators, including the Impleaded Defendants, are using or have used complex layering, shell entities, and crypto-asset channels, including U.S.-based custodians and Florida-tethered banking relationships, to acquire, hold, transfer, and conceal assets in order to hinder, delay, and defraud creditors.

24.     The foregoing conduct constitutes transfers of "assets" under Fla. Stat. § 726.102(2) and was undertaken with actual intent to hinder, delay, or defraud Creditors, and/or undertaken

---

[9]   *See* Press Statement, Marco Rubio, Secretary of State (Nov. 16, 2025) *available at:* https://www.state.gov/releases/office-of-the-spokesperson/2025/11/terrorist-designations-of-cartel-de-los-soles.

without receiving reasonably equivalent value while Judgment Debtors were insolvent or became insolvent as a result of such transfers.

## III.   THE PROPERTY AND OTHER KNOWN AND SUSPECTED TRANSFERS

### A.   The Figuera-Family Transfers

25.   On or about August 24, 2020, the Property was purchased through a cash payment in excess of $250,000, via a wire originating from an account held in the name of Reinefeld.

26.   Records for accounts held by Reinefeld show that, in the period preceding the Property purchase, more than $400,000 flowed through her accounts, including substantial incoming Zelle transfers and wires from (a) Figuera, and (b) multiple senders with known or reasonably suspected ties to members of COS, deposits from an identified cryptocurrency exchange, as well as incoming credits from two Florida entities that are now administratively dissolved.

27.   Bank records show that, during the same period, Reinefeld's wage deposits were inconsistent with the magnitude of cash otherwise entering her accounts.

28.   The Creditor's underlying claims—arising from torture and associated violations which Figuera has acknowledged via his own public statements—existed prior to the Property purchase.

29.   A "claim" under Chapter 726 includes claims "whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured…" Fla. Stat. § 726.102(4); *see also* § 726.102(3) (defining "creditor"), § 726.102(6) (defining "debtor").

30.   The Property was titled to Pinto Bravo, who is the stepson of Figuera, while the consideration was paid from Reinefeld's account. Both Figuera and Reinefeld listed the Property as their address on Florida driver's licenses. These facts constitute multiple "badges of fraud"

under Fla. Stat. § 726.105(2), including transfer to an insider (§ 726.105(2)(a); § 726.102(8) "insider" includes a relative by affinity); retention of possession or control (§ 726.105(2)(b)); concealment (§ 726.105(2)(c)); and a lack of reasonably equivalent value in exchange for the transfer (§ 726.105(2)(h)), among others, subject to proof.

### B.     <u>Fraudulent Transfers to other COS Members</u>

31. Upon information and belief, Saab and Flores have engaged in similar patterns of conduct, by transferring and continuing to transfer value to, through, or for the benefit of COS and Maduro after the claim arose and in anticipation of execution; including real property, personal property, virtual currency, and other assets, with actual intent to hinder, delay, or defraud Creditors by placing substantial assets out of their reach.

32. Saab and Flores are agents, confidants, and frontmen of the COS, Maduro, and/or other Defendants/Judgment Debtors and, for which they were both indicted, and continue to be in possession of immense assets and sources of wealth through their activities on behalf of themselves, Maduro, and COS. Upon information and belief, the value of those fraudulently transferred assets knowingly received, held, and distributed by Saab and Flores exceeds the amount of the Judgment. As to that wealth and those assets, both Saab and Flores acted as conduits/nominees for illicit asset concealment and, thus badges of fraud under § 726.105(2) are present, including insider status, litigation pendency, concealed transfers, lack of reasonably equivalent value, and retention of control.

33. For all these reasons, Saab and Flores should be impleaded as defendants as transferee/nominee of property of the Judgment Debtors, and this Court should order discovery against them to identify any and all fraudulently transferred assets or wealth in their custody and

control and order turnover/repatriation of any and all real and personal property, virtual currency, or its United States Dollar equivalent, and enter further relief under Fla. Stat. § 56.29(6), (9).

### C.      Sources of Law for Relief Sought

34.      Chapter 726 provides remedies to a creditor, including avoidance, "attachment or other provisional remedy," and "an injunction against further disposition by the debtor or a transferee," and "any other relief the circumstances may require." Fla. Stat. § 726.108(1)(a)–(e).

35.      A purchase-money resulting trust or constructive trust may be imposed where one person pays the consideration for property, but title is placed in another, to prevent unjust enrichment and to reflect beneficial ownership in the payor or in equity. *See, e.g., Tilton v. Horton*, 617 So. 2d 1321, 1323 (Fla. 5th DCA 1993) (purchase-money resulting trust arises where consideration is paid by one person and title is taken in another); *Cohen v. Shushan*, 212 So. 3d 1113, 1115–16 (Fla. 3d DCA 2017) (constructive trust to prevent unjust enrichment and fraud).

36.      Plaintiffs seek to preserve the status quo and prevent dissipation of assets pending adjudication, as expressly authorized under Fla. Stat. § 726.108(1)(b)–(d), Fla. R. Civ. P. 1.610, and Fla. Stat. § 48.23 (*lis pendens*).

37.      Additionally, because of the high volume of suspicious transactions already uncovered, Creditors reasonably suspect that, through discovery under Chapter 726 and the Federal Rules of Civil Procedure, that they will further identify and particularize additional transfers, dates, participants, pathways, custodians, and specific assets to be avoided and recovered. Upon information and belief, the funds transfers to be avoided will include highly alienable assets including, but not limited to:

a. Currency, funds, credits, monetary instruments, and deposits maintained directly or indirectly for the benefit of Judgment Debtors and/or Impleaded Defendants, or their agencies/instrumentalities, correspondent banks, or custodians;

b. Cryptocurrency wallets, keys, and accounts beneficially owned or controlled by Judgment Debtors and/or Impleaded Defendants their agencies/instrumentalities, custodied or transacted through U.S.-based or Florida-tethered exchanges, OTC desks, or custodians; and

c. Interests in Florida-based or Florida-tethered shell companies, trusts, real property, or corporate vehicles that received, hold, or conceal Judgment Debtors' assets or proceeds.

## IV.    CAUSES OF ACTION

**COUNT I – ACTUAL FRAUDULENT TRANSFER AGAINST DEFENDANTS AND THE IMPLEADED DEFENDANTS**
**(Fla. Stat. § 726.105(1)(a))**

38.    Creditors repeat and re-allege each allegation of the foregoing paragraphs as if fully set forth herein.

39.    Florida law defines a transfer of assets by a debtor as "fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Fla. Stat. § 726.105(1)(a).

40.    Defendants/Judgment Debtors, including but not limited to Figuera, Maduro, and COS, made and/or caused to be made transfers of their assets and property to one or more of the Impleaded Defendants with the actual intent to hinder, delay, or defraud their past, present, and/or future creditors, including Creditors, as evidenced by a variety of enumerated badges of fraud.

11

41.     WHEREFORE Creditors are entitled to avoidance of such transfers to the extent necessary to satisfy the Judgment, entry of a money judgment against initial and subsequent transferees as permitted by law, attachment and levy on the transferred assets, and any other relief available under Chapter 726 and Fla. Stat. § 56.29.

**COUNT II – CONSTRUCTIVE FRAUDULENT TRANSFER AGAINST DEFENDANTS AND IMPLEADED DEFENDANTS**
**(Fla. Stat. §§ 726.105(1)(b) and  726.106)**

42.     Creditors repeat and re-allege the allegations in paragraphs 1 through 37, as if fully set forth herein.

43.     Florida law defines a transfer of assets by a debtor as "fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor" was at or near insolvency or believed that he would incur debts beyond his ability to pay. Fla. Stat. § 726.105(1)(b).

44.     Defendants/Judgment Debtors, including but not limited to Figuera, Maduro, and COS, received less than reasonably equivalent value in exchange for transfers to one or more of the Impleaded Defendants, at a time when Defendant/Judgment Debtors were insolvent or became insolvent as a result, or intended to incur or believed they would incur debts beyond their ability to pay as they became due.

45.     WHEREFORE, Creditors are entitled to avoidance of such transfers to the extent necessary to satisfy the Judgment, entry of a money judgment against initial and subsequent transferees as permitted by law, attachment and levy on the transferred assets, and any other relief available under Chapter 726, Florida Statutes, and Fla. Stat. § 56.29.

### COUNT III – CONSTRUCTIVE TRUST / EQUITABLE LIEN / DISGORGEMENT AGAINST DEFENDANTS AND IMPLEADED DEFENDANTS

46. Creditors repeat and re-allege the allegations in paragraphs 1 through 37, as if fully set forth herein.

47. The Property, and other assets identified herein or subsequently identified through discovery in this matter, and any proceeds thereof, are traceable to the Defendants/Judgment Debtors' property and to illicit activities used to finance the torture enterprise underlying Creditors' Judgment. In equity and good conscience, Impleaded Defendants now hold such assets for Creditors' benefit.

48. WHEREFORE, Creditors are entitled to a constructive trust, equitable lien, and disgorgement over the transferred assets and proceeds to be applied to satisfy the Judgment, including, but not limited to, the Property.

### COUNT IV – TURNOVER, EXECUTION, AND ANCILLARY RELIEF AGAINST DEFENDANTS AND IMPLEADED DEFENDANTS (Fla. Stat. § 56.29(6), (9))

49. Creditors repeat and re-allege the allegations in paragraphs 1 through 37, as if fully set forth herein.

50. Subject to applicable principles of equity, and in accordance with the Florida law governing execution, attachment, and garnishment, the Court should order that the assets described herein—and all related proceeds and traceable property—as well as any later discovered assets held by Impleaded Defendants on behalf of, belonging to, or fraudulently transferred by Defendants/Judgment Debtors, be turned over, sequestered, levied upon, or otherwise applied toward satisfaction of the Judgment.

**COUNT V – INJUNCTIVE RELIEF AND PRESERVATION OF ASSETS AGAINST
DEFENDANTS AND IMPLEADED DEFENDANTS
(Fla. Stat. § 56.29(6) and § 726.108(c))**

51.     Creditors repeat and re-allege the allegations in paragraphs 1 through 37, as if fully set forth herein.

52.     Under Florida law, judgment creditors are entitled to injunctive relief "against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property." Fla. Stat. § 726.108(c)(1).

53.     Immediate injunctive relief is necessary to preserve the status quo, prevent dissipation of easily moved or concealed assets, and ensure the executability of this Court's Judgment.

54.     Creditors are entitled to injunctive relief prohibiting Defendants/Judgment Debtors and/or Impleaded Defendants, and those acting in concert with them, from transferring, encumbering, dissipating, concealing, or otherwise disposing of assets described herein—and all related proceeds and traceable property—as well as any later discovered assets belonging to or fraudulently transferred by Defendants/Judgment Debtors, and requiring deposit of such identifiable funds into the registry of the Court or into an agreed escrow pending further order.

55.     In support thereof, Creditors are entitled to an accounting from Impleaded Defendants for all property received from or for the benefit of Defendants/Judgment Debtors and the disposition thereof.

**V.      PRAYER FOR RELIEF**

WHEREFORE, Creditors respectfully request that the Court:

   A.     Docket this supplemental proceeding under the same case number and proceed in accordance with Fla. Stat. § 56.29(9);

14

B.     Enter judgment avoiding and setting aside the fraudulent transfers described herein, and those subsequently revealed in discovery, to the extent necessary to satisfy the Judgment;

C.     Enter judgment, as permitted by Chapter 726, against Impleaded Defendants for the value of the assets fraudulently transferred;

D.     Impose a constructive trust and equitable lien upon the Property, and all proceeds and traceable property, and order disgorgement and turnover to the U.S. Marshal or other appropriate officer for execution and satisfaction of the Judgment;

E.     Issue injunctive relief prohibiting Defendants/Judgment Debtors and/or Impleaded Defendants, and all persons acting in concert with them, from transferring, conveying, encumbering, dissipating, concealing, or otherwise disposing of assets, and requiring deposit of identifiable funds into the registry of the Court or an agreed escrow pending further order;

F.     Authorize immediate discovery pursuant to the Federal Rules of Civil Procedure and Chapter 726, Florida Statutes, directed to all Defendants/Judgment Debtors and Impleaded Defendants, and to custodial institutions, including third-party subpoenas, blockchain analytics discovery, and financial records discovery, to identify, trace, and recover assets subject to this Court's Judgment;

G.     Appoint, as appropriate, a receiver pursuant to Fla. Stat. § 56.10, and/or the Court's equitable powers, to take possession and control of the Property, and/or other assets belonging to Defendants/Judgment Debtors and/or Impleaded Defendants, so as to marshal, preserve, and liquidate such assets for application to the Judgment;

H.     Award Creditors their costs and attorney's fees as permitted by law, including under Fla. Stat. § 57.115 and Fla. Stat. § 56.29; and

I.     Grant such other and further legal and/or equitable relief as the Court deems just and proper to effectuate execution and satisfaction of the Judgment.

Creditors demand a trial by jury on all issues so triable.

Dated: April 22, 2026

Respectfully submitted,

*/s/ Francis D. Murray*
Francis D. Murray (FL Bar No. 108567)
Michael B. Nadler (FL Bar No. 51264)
STUMPHAUZER KOLAYA NADLER &
SLOMAN PLLC
One Biscayne Tower

15

2 South Biscayne Boulevard, Suite 1600
Miami, FL 33131
Telephone: (305) 614-1400
Facsimile: (305) 614-1425
Email: mnadler@sknlaw.com
Email: fmurrary@sknlaw.com

Randy D. Singer (VA Bar No. 26501)*
Kevin A. Hoffman (VA Bar No. 87632)*
SINGER HOFFMAN, LLC
1209A Laskin Road
Virginia Beach, VA 23451
Telephone: (757) 301-9995
Facsimile: (757) 233-1084
Email: randy.singer@singerhoffman.com
Email: kevin.hoffman@singerhoffman.com

Jeff S. Howell, Jr. (VA Bar No. 87645)*
THE LAW OFFICE OF JEFF S. HOWELL,
JR. PLLC
P.O. Box 2219
Virginia Beach, VA 23450
Telephone: (757) 301-2244
Email: jhowell@jshlaw.us

*Counsel for Creditors*
*admitted *pro hac vice*